UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

**AHAD B. AZEMI,**
    Plaintiff,

v.

**BLUE ORIGIN ALABAMA LLC,**
    Defendant.

Case No. 5:24-cv-1398-CLM

## MEMORANDUM OPINION

Pro se Plaintiff Ahad Azemi sues his former employer, Blue Origin Alabama LLC, for employment discrimination under Title VII and the ADEA. (Doc. 1). Blue Origin asks the court to compel arbitration. (Doc. 13). For the reasons explained below, the court **GRANTS** Blue Origin's request.

## BACKGROUND

Ahad Azemi is a 63-year-old United States citizen. Azemi was born in Iran, moved to the United States as a teenager, and has lived here ever since. Below, the court briefly recounts Azemi's allegations against Blue Origin, then discusses the arbitration clause at issue.

**A. Azemi's allegations**

    1. *National Origin Discrimination*

Azemi began working at Blue Origin as a Project Manager in 2020. Azemi claims that Blue Origin discriminated against him based on his Iranian origin over the course of his employment. For instance, Azemi alleges his national origin often came up in conversation with Brian Harvard, a senior-ranking Blue Origin official. Harvard asked Azemi questions such as "where are you really from?" and "did you obtain your citizenship before or after 9/11?". According to Azemi, his Iranian heritage

1

"remained a recurring topic, with security-related questions and comments directed at [him] during technical presentations and meetings irrelevant to the matters at hand." (Doc. 1, p. 7).

### 2. *Age Discrimination*

Azemi also claims Blue Origin discriminated against him based on his age. Azemi points to one example where he led a "multimillion-dollar project for the design and implementation of the heat treatment area at the Huntsville facility." (*Id*.). Even though Azemi received positive feedback for this work, Blue Origin promoted younger employees over him.

### 3. *Retaliation & Wrongful Termination*

Azemi reported the perceived discrimination to his direct supervisor, Ken Delgreco. Azemi told Delgreco about receiving repeated and random questions about his national origin. Azemi claims that after meeting with Delgreco, Azemi was excluded from important meetings and was given less significant work. Azemi also began to receive poor performance reviews "without any valid basis or supporting evidence." (*Id*). At one point, Azemi received accusations of threatening other employees in violation of Blue Origin policy. According to Azemi, even though such accusations were false and unsubstantiated, Blue Origin failed to formally investigative them. Blue Origin ultimately terminated Azemi based (in part) on these reports.

—

Azemi raised these claims to the EEOC in August 2021, and the EEOC gave Azemi a write to sue letter in July 2024. (Doc. 1, p. 59). Azemi then sued Blue Origin here. (Doc. 1).

## B. Arbitration clause

Blue Origin now asks the court to compel arbitration. (Doc. 13). In support, Blue Origin points to an arbitration agreement Azemi signed as part of his onboarding process. That agreement says:

> . . . [A]ll claims, disputes, or controversies relating to or arising out of my employment with the Company, except for the Excluded Claims listed below, shall be determined by binding arbitration before a single, neutral arbitrator. . . <mark>This arbitration agreement applies to any and all claims, disputes, or controversies between the Company and [Plaintiff], including,</mark> without limitation, claims arising out of or relating to [Plaintiff's] employment application and/or hiring process, employment with the Company, and/or any termination of [Plaintiff's] employment, claims for breach of this Agreement or otherwise relating to or arising out of this Agreement . . . and any other . . . <mark>claims under federal, state, and local anti-discrimination, anti-harassment, and anti-retaliation laws and all other statutes governing the employment relationship</mark> . . . .

(Doc. 13-1, p. 17–18) (highlighting added). Blue Origin argues the highlighted part of the arbitration agreement covers Azemi's claims.

Azemi does not dispute that he signed the arbitration agreement or that it applies to his claims. Rather, Azemi claims Blue Origin waived its right to arbitrate by engaging in "litigation-like conduct before the" EEOC and by "strategic[ally] delay[ing]" its invocation of the Agreement. *See generally* (doc. 19).

## STANDARD OF REVIEW

In ruling on a motion to compel arbitration, this court applies a standard like the standard of review applied to rule on a motion for summary judgment. *See In re Checking Account Overdraft Litig.*, 754 F.3d 1290, 1294 (11th Cir. 2014) (describing an order compelling arbitration as "summary-judgment-like" because it is "in effect a summary disposition of the issue of whether or not there has been a meeting of the minds on the agreement to arbitrate"). A motion for summary judgment should be

3

granted if "no genuine dispute as to any material fact" remains in the action and "the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is material "if, under the applicable substantive law, it might affect the outcome of the case." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). A genuine dispute as to a material fact exists where "the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Looney v. Moore*, 886 F.3d 1058, 1062 (11th Cir. 2018).

## DISCUSSION

As mentioned, Azemi does not dispute that he signed the arbitration agreement, nor does he dispute that it applies to his claims. He argues instead that Blue Origin waived the arbitration agreement by not seeking to enforce it before Azemi filed this lawsuit, particularly during the years-long EEOC proceedings (2021-2024). But the Eleventh Circuit has rejected the same argument:

> Brown also argues that ITT waived its right to arbitrate . . . by failing to raise the arbitration issue with the EEOC. This assertion is also without merit. Waiver results from a party's 'substantial participation in litigation to a point inconsistent with an intent to arbitrate' which results in prejudice to the other party. *Morewitz v. West England Ship Owners Mut. Protection and Indem. Assoc.*, 62 F.3d 1356, 1366 (11th Cir.1995). . . .
>
> ITT was also under no obligation to make a pre–suit demand for arbitration. *Morewitz*, 62 F.3d at 1366. The demand for arbitration was made promptly after the lawsuit was filed. Brown did not incur the delay or expense associated with litigation that might otherwise demonstrate prejudice. *Id.* As there was no delay or action by ITT inconsistent with an intent to arbitrate, no waiver occurred. The district court properly granted the motion to compel arbitration.

4

*Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 122-23 (11th Cir. 2000). Based on this precedent, the court finds that Blue Origin did not waive arbitration because (a) Blue Origin took no action inconsistent with arbitration and (b) Azemi suffered no litigation-related delay or expense.

That leaves only the plain terms of the arbitration agreement, which the court must place "on equal footing with other contracts and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 339 (2011). When determining whether to grant a motion to compel arbitration, courts must "consider: (1) whether there is a valid agreement to arbitrate; and (2) whether the dispute in question falls within the scope of that agreement." *Carusone v. Nintendo of Am., Inc.*, No. 5:19-CV-01183-LCB, 2020 WL 3545468, at *3 (N.D. Ala. June 30, 2020) (quoting *Scurtu v. Int'l Student Exch.*, 523 F. Supp. 2d 1313, 1318 (S.D. Ala. 2007)). "To resolve these questions, courts apply state-law principles relating to ordinary contract formation and interpretation, construed through the lens of the federal policy favoring arbitration." *Scurtu*, 523 F. Supp. 2d at 1318; *see also Caley v. Gulfstream Aerospace Corp.,* 428 F.3d 1359, 1368 (11th Cir. 2005) ("[When] determining whether a binding agreement arose between the parties, courts apply the contract law of the particular state" where the dispute occurred.).

Azemi does not dispute that he signed the employment contract that contained the arbitration agreement. "[W]hen a competent adult . . . signs a contract, [they] will be held to be on notice of all the provisions contained in that contract and will be bound thereby." *Ex parte Brown*, 26 So. 3d 1222, 1227 (Ala. 2009). Because Azemi signed the contract, he is bound by its arbitration provision. *See id.* And the arbitration agreement expressly covers Azemi's claims, which arise under "federal, state, and local anti-discrimination, anti-harassment, and anti-retaliation laws and all other statutes governing the employment relationship . . . ." (Doc. 13-1, p. 17).

## CONCLUSION

For these reasons, the court **GRANTS** Blue Origin's motion to compel arbitration. (Doc. 13). The court will stay the case pending arbitration.

**DONE** and **ORDERED** on April 22, 2025.

_____
**COREY L. MAZE**